**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Flood, | No. 03-02050-PHX-DGC (VAM) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, Conrad Luna, Barbara Shearer, | |
| Defendants. | |

Pending before the Court are Defendants' motion for summary judgment (Doc. 24) and Plaintiff's motion for summary judgment (Doc. 28). For the reasons set forth below, Defendants' motion for summary judgment will be granted in part and Plaintiff's motion for summary judgment will be denied

## Background

Plaintiff has been incarcerated for approximately three years in Special Management Unit Two ("SMU-II") of the Arizona State Prison Complex in Florence, Arizona. Plaintiff filed a pro se complaint (Doc. 1) naming Defendants Charles Ryan, Conrad Luna, and Barbara Shearer in their individual and official capacities.[1] Plaintiff's complaint asserts that his transfer to and continued confinement in SMU-II violates his right to due process (Count I) and his right to be free of cruel and unusual punishment (Count II). Plaintiff also alleges his confinement in SMU-II constitutes retaliation for the exercise of his constitutional right to be free of self-incrimination

---

[1] Dora B. Schriro has been automatically substituted for Defendant Ryan in his official capacity. *See* Fed. R. Civ. P. 25(d)(1).

and that Defendants are using excessive force to induce him to incriminate himself (Count III). Plaintiff seeks declaratory and injunctive relief.

Defendants filed a motion for summary judgment and a separate statement of facts (Doc. 24 & Doc. 25) in support of their motion. Defendants assert Plaintiff receives due process through periodic reviews of his housing status and that he received due process prior to being placed in SMU-II. Defendants argue that the conditions of SMU-II do not constitute cruel and unusual punishment because Plaintiff has not been denied any basic necessity of life and because all of the challenged restrictions serve legitimate security interests. Defendants also contend that Plaintiff has not stated a retaliation claim as a matter of law because his periodic classification reviews do not implicate his Fifth Amendment rights.

Plaintiff filed a motion for summary judgment and an accompanying statement of facts (Doc. 27 & Doc. 28). Plaintiff contends that "the ongoing indefinite confinement of Plaintiff . . . in SMU 2 is an exaggerated response to security concerns and additional evidence that the confinement is being used as a tool of retaliation to encourage debriefing and not further a security interest." Doc. 28 at 4.

Defendants filed a reply (Doc. 30) in support of their motion for summary judgment and in response to Plaintiff's motion for summary judgment.

**Discussion**

**I.  Standard for granting summary judgment.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2005); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The initial burden is on the moving party to show an absence of genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 325. Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. Similarly, to preclude

summary judgment the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*, 477 U.S. at 322. *See also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).

## II. Factual background.

The following material facts are not genuinely disputed.

Plaintiff is an inmate in the custody of the Arizona Department of Corrections ("ADOC"), housed in SMU-II. Defendant Schriro is the director of ADOC. Defendant Luna is the Deputy Warden responsible for SMU-II. Defendant Shearer is an ADOC Correctional Classification Specialist.

On November 7, 2002, Plaintiff was validated by ADOC as a member of a "Security Threat Group" ("STG"), the Aryan Brotherhood. Plaintiff was given notice of the impending validation hearing seven days before the hearing. Doc. 25, para. 9. The notice included a statement of the evidence that ADOC intended to use to implicate Plaintiff as a member of the Aryan Brotherhood and stated Plaintiff could appear at the hearing and present a defense. *Id.*, para. 10-11. Plaintiff appeared at the hearing and denied membership in the STG. *Id.*, para. 13.

The STG Hearing Committee relied on the following evidence to validate Plaintiff as a member of the Aryan Brotherhood: two pieces of paper seized from Plaintiff containing the names and ADOC inmate numbers of eighteen validated members of the Aryan Brotherhood; a letter, seized from Plaintiff, "believed to have been authored by a validated Aryan Brotherhood member referencing other suspected and validated Aryan Brotherhood members"; an Aryan Brotherhood membership list recovered from a validated Aryan Brotherhood member listing Plaintiff's name and ADOC inmate number in addition to those of approximately 135 other

-3-

1  inmates, 113 of which "are suspected or validated Aryan Brotherhood members." *Id.*, para. 14.

2  Plaintiff's STG validation was pursuant to ADOC Department Order 806, adopted to
3  minimize prison gang activity and the threat posed by this activity to the "safe, secure and
4  efficient operation of Arizona's prisons." *Id.*, para. 3. Plaintiff appealed his validation, and the
5  appeal was denied on January 22, 2003. *Id.*, para. 16. As a result of his validation as a member
6  of a STG, Plaintiff has been housed at SMU-II since June 6, 2003. *Id.*, para. 1

7  Plaintiff receives reviews of his STG classification approximately every 180 days. *Id.*,
8  para. 18. Plaintiff may be reclassified and released from SMU-II to less restrictive conditions
9  only if he "debriefs," i.e., admits gang membership and supplies ADOC officials with
10 information about gang activity. *Id.*, para. 23. Plaintiff may be present and speak on his own
11 behalf at each reclassification hearing, and is given the opportunity to debrief at each hearing.
12 *Id.*, para. 20.

13 Plaintiff and the other validated STG members lead a heavily restricted life in SMU-II.
14 Plaintiff's cell is illuminated twenty-four hours per day to allow security checks, although the
15 lights are dimmed at night. The cell contains a sink, a toilet and a bed. Although Plaintiff may
16 speak with inmates in other cells, he is allowed no face-to-face communication with them, nor
17 can he pass notes or share legal documents. Plaintiff is allowed only one visit per week for a
18 maximum of two hours. During that time, Plaintiff is separated from his visitors by glass.
19 Plaintiff is allowed one five-minute phone call per week and is ineligible for compassionate
20 escorted leave. He may send and receive mail. Plaintiff is permitted three showers per week,
21 which coincide with the three, one-hour, out-of-cell exercise sessions he is permitted each week.
22 These exercise sessions occur in a recreation area with a cement floor, twenty-foot high cement
23 walls, and a steel mesh top. Only one inmate at a time is allowed in the recreation area. Inmates
24 are permitted unlimited in-cell exercise.

25 Plaintiff receives three meals a day on weekdays and two per day on weekends. Plaintiff
26 cannot purchase food from the commissary, but may purchase hygiene-related items, vitamins,
27 a television, a walkman, and clothes. Plaintiff may speak to the prison staff several times per
28 day, and he has access to counselors, with whom he may speak face-to-face up to five times per

1  week. Plaintiff is ineligible for work and vocational, recreational or education programs, but is
2  allowed in-cell programs.

3  Plaintiff contends that Defendants know the conditions of SMU-II cause psychological
4  harm to inmates and that, in response to *Koch*,[2] Defendants "made the conditions in SMU 2 even
5  more extreme – knowing (by their own expert witness's admissions), that permanent
6  psychological harm loomed in the future for all prisoners indefinitely confined to SMU 2."
7  Doc. 28 at 7. Plaintiff alleges that Defendants' culpable mental state is evident because they
8  have been repeatedly advised about the potential risk of psychological and physical harm to
9  SMU-II inmates and yet continue to impose these conditions. *Id.* Plaintiff avers that, absent his
10 "debriefing," he will remain in SMU-II until his release date of November 19, 2017, resulting
11 in approximately 14 years of confinement in SMU-II. *Id.*, para. 5.

12 Plaintiff further asserts that prisoners placed in SMU-II for disciplinary charges or
13 classification overrides are permitted the opportunity for a reclassification hearing every 180
14 days and do not have to debrief or admit any overt act of misconduct to be reclassified and
15 released from SMU-II. *Id.*, para. 21. Plaintiff does not assert that he has experienced any
16 physical or psychological deterioration as a result of being placed in SMU-II. His primary
17 complaint is the requirement that he debrief in order to be reclassified.

18 **III.    Count I.**

19 In Count I, Plaintiff contends that his initial and continued confinement in SMU-II violate
20 his right to due process. The Court engages in a two-step process to determine whether a
21 plaintiff's procedural due process rights have been violated. First, the Court must determine if
22 the plaintiff possessed a liberty interest with which the state interfered. *See*, *e.g.*, *Serrano v.*
23 *Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003), *cert. denied*, 125 S. Ct. 43 (2004); *Biggs v.*
24 *Terhune*, 334 F.3d 910, 913 (9th Cir. 2003). If the plaintiff had a protected liberty interest, the

25

26 [2] See Koch v. Lewis, 96 F. Supp. 2d 949 (D. Ariz. 2000), *Koch v. Lewis*, 216 F. Supp. 2d 994,
   1000 (D. Ariz. 2001), and *Koch v. Lewis*, 2001 WL 1944737, *all orders vacated by Koch v.*
27 *Schriro*, 399 F.3d 1099, 1101 (9th Cir. 2005).

28

-5-

Court must determine if the state's action was preceded by sufficient procedural and evidentiary safeguards. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Serrano*, 345 F. 3d at 1078-79.

One of the liberty interests retained by prisoners is the right to be free from the imposition of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, (1995) (citations omitted). The Court concludes that Plaintiff possesses a liberty interest implicated by his continued detention in SMU-II. *See Wilkinson v. Austin*, 125 S. Ct. 2384, 2394 (2005) (concluding that assignment to a "super max" prison facility constitutes "an atypical and significant hardship under any plausible baseline.").

Due process requires that an inmate receive notice of a hearing regarding his protected interest, an opportunity to present his views to the hearing officers, and an explanation of the decision to continue his segregation. *See Wolff v. McDonell,* 418 U.S. 539, 563-70 (1974); *Toussaint v. McCarthy,* 801 F.2d 1080, 1100 (9th Cir. 1986). Plaintiff does not dispute that he received these protections at his initial STG classification hearing and at the periodic reviews of his classification. Plaintiff therefore fails to raise a genuine issue of material fact as to whether he was afforded due process.

Additionally, to comport with due process, the deprivation of the plaintiff's liberty interest must be supported by "some evidence in the record." *Superintendent Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985). This standard is only "minimally stringent." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (examining the standard in the context of a parole revocation). The relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. *Id. See also Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994). In this case, Plaintiff's STG validation is supported by evidence in the record, as described above.

The Court concludes that Plaintiff's initial STG classification did not deprive him of due process. *See Bruce v. Ylst,* 351 F.3d 1283, 1287-88 (9th Cir. 2003); *Wolff v. Hood,* 242 F. Supp. 2d 811 (N.D. Cal. 2002). Additionally, Plaintiff continues to receive due process regarding his periodic reclassification hearings. His continued confinement in SMU-II therefore does not

1  violate his right to procedural due process.

2  Plaintiff also argues that his right to due process is violated because he is being disciplined for a status offense, i.e., being a gang member, as opposed to his actual conduct while in prison. The undisputed facts recounted above demonstrate, however, that Plaintiff is being subjected to discipline not for any involuntary status, but because Defendants have determined, through procedures that comport with due process, that Plaintiff joined a prison gang and refuses to terminate that relationship.

**IV.    Count II.**

In Count II, Plaintiff asserts that SMU-II's conditions of confinement violate his right to be free of cruel and unusual punishment. To prevail on this claim, Plaintiff must establish that he is denied "the minimal civilized measure of life's necessities." *Farmer v. Brennan,* 511 U.S. 825, 834-35 (1994); *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002). Plaintiff must also demonstrate that prison officials acted with deliberate indifference to his health or safety. *Farmer,* 511 U.S. at 837. In order to state a claim of constitutional significance regarding prison living conditions, Plaintiff must demonstrate that the conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). Additionally, Plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, or that the conditions have created an unreasonable risk of serious damage to his future health. *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Strickler v. Waters*, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

> An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective. Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference.

*Allen v. Sakai*, 48 F.3d 1082, 1083-84 (9th Cir. 1995) (internal citations and quotations omitted). *See also Wilson*, 501 U.S. at 304 (holding that a plaintiff satisfies the objective element of the analysis by establishing the deprivation of a basic human need); *Gibson v. County of Washoe,*

-7-

*Nev.,* 290 F.3d 1175, 1187 (9th Cir. 2002).

In describing the state of mind necessary for deliberate indifference, the Supreme Court has held that a prison official must disregard "a risk of harm of which he is aware." *Farmer*, 511 U.S. at 837. A defendant

> cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

Plaintiff contends that prison officials expose him to a substantial risk of serious harm by forcing him to live in unconstitutionally harsh conditions which could result in psychological and physical harm. Plaintiff specifically complains of the following conditions: 24-hour illumination of his cell, extremely limited opportunities to exercise, a limited-calorie diet, limited ability to socialize with other inmates, and limited use of the telephone. The Court must consider each of these conditions separately because a plaintiff may not prevail on an Eighth Amendment claim by asserting that the totality of the conditions constitutes cruel and unusual punishment. *See*, *e.g.*, *Hoptowit v. Ray,* 682 F.2d 1237, 1246-47 (9th Cir. 1982).

**A.     Cell illumination.**

Requiring inmates to live in constant illumination can violate an inmates' Eighth Amendment rights. *See Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996). Constant illumination is not a constitutional violation, however, if the inmate is not harmed by the light, i.e., when the lighting of the cell is not an extreme condition of confinement causing the inmate to endure more than routine discomfort. *See Wills v. Terhune*, 404 F. Supp. 2d 1226, 1231 (E.D. Cal. 2005).

The lights in Plaintiff's cell are dimmed at night. Plaintiff does not claim or present evidence that he suffers sleeping problems or any physical or psychological harm as a result of the illumination, as did the plaintiff in *Keenan*. Plaintiff has not presented evidence that he has been deprived of sleep, and Defendants produce evidence of a legitimate penological purpose for maintaining the illumination. Because Plaintiff has not presented evidence to establish an

Eighth Amendment violation, Defendants are entitled to judgment as a matter of law onwith regard to this claim. *Cf. Scarver v. Litscher*, 434 F.3d 972, 977 (7th Cir. 2006); *Chavarria v. Stacks*, 102 Fed. App. 433, 436 (5th Cir. 2004); *Shepherd v. Ault*, 982 F. Supp. 643, 645-46 & n.3 (N.D. Iowa 1997) (discussing federal court opinions with regard to illumination of cells). *Compare King v. Frank*, 328 F. Supp. 2d 940, 946 (W.D. Wis. 2004).

**B.  Outdoor exercise.**

Exercise is "one of the basic human necessities protected by the Eighth Amendment." *Lemaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993). "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan,* 83 F.3d at 1090.

The parties agree that Plaintiff has been allowed three hours of "outdoor" exercise per week in a "recreation area" with a cement floor and walls and a steel grate over the top. Plaintiff contends that three hours are insufficient and result in physical and psychological harm.

The Ninth Circuit has not established a bright line rule regarding how much outdoor exercise is required to satisfy the objective component of Eighth Amendment analysis. *See Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000) (concluding that denying outdoor exercise to an inmate confined in a special housing unit for a period of six and one-half months raised a factual issue regarding violation of the prisoner's Eighth Amendment rights); *Allen*, 48 F.3d at 1088 (concluding that summary judgment was not properly granted where the plaintiff alleged he was provided 45 minutes of outdoor exercise per week for six weeks); *Toussaint v. Yockey*, 722 F.2d 1490, 1492-93 (9th Cir. 1984) (concluding that a substantial constitutional question was raised by the defendants' denial of outdoor exercise to inmates confined in segregation for over one year); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (concluding that, in general and weather permitting, inmates were entitled to one hour of exercise five times per week). *See also Caldwell v. Miller,* 790 F.2d 589, 600 (7th Cir. 1986); *Davenport v. DeRobertis,* 653 F. Supp. 649, 655-56 (N.D. Ill. 1987) (granting injunction requiring more outdoor exercise after trial where jury heard testimony from medical doctors, psychiatrists, and other professionals about the effects of exercise, and a lack thereof, on an inmate's psychological

1  state).

2  As a general matter, the federal courts have required at least five hours per week of
3  outdoor exercise, although in some circumstances courts have approved as little as one hour per
4  week. *Compare Davenport v. DeRobertis,* 844 F.2d 1310, 1315 (7th Cir. 1988) (affirming
5  district court injunction requiring five hours per week of outdoor exercise), *and Ruiz v. Estelle,*
6  679 F.2d 1115, 1151-52 (5th Cir. 1982) (affirming district court decree requiring at least one
7  hour per day of exercise for inmates in administrative segregation), *and Frazier v. Ward,* 426
8  F. Supp. 1354, 1367-69 (N.D.N.Y. 1977) (requiring at least one hour per day of outdoor
9  exercise), *with Bailey v. Shillinger,* 828 F.2d 651, 653 (10th Cir. 1987) (holding that one hour
10 per week of outdoor exercise does not violate the Eighth Amendment).

11 These cases suggest that Plaintiff's allotment of three hours of exercise per week might
12 raise constitutional concerns. Defendants recently have demonstrated in another case in this
13 District, however, that the policy regarding the amount of exercise afforded inmates in SMU II
14 has been changed to six hours per week. *See Baptisto v. Ryan*, 03 CV 1393 PHX SRB, Doc. 111
15 at 36. Because of this apparent change in policy, the parties' motions with regard to this issue
16 will be denied and Defendants will be allowed a period of thirty days from the date of this order
17 to file a motion for summary judgment with regard to Plaintiff's exercise claim setting forth any
18 new policies adopted by ADOC.

19 **C.  Caloric intake.**

20 "Adequate food is a basic human need protected by the Eighth Amendment." *Keenan,*
21 83 F.3d at 1091 (citations omitted). "The Eighth Amendment requires only that prisoners
22 receive food that is adequate to maintain health." *LeMaire,* 12 F.3d at 1456. Plaintiff offers no
23 evidence that he has suffered any health problems as a result of his diet, nor does he assert that
24 his diet might lead to future health problems. Therefore, no material questions of fact remain
25 and Defendants are entitled to judgment as a matter of law.

26 **D.  Socializing with other inmates and telephone privileges.**

27 The Supreme Court considered the permissibility of limitations on prison visitation in
28 *Overton v. Bazzetta,* 539 U.S. 126, 136-37 (2003). The Supreme Court held that visitation

restrictions did not raise cruel and unusual punishment concerns stating, however, that "[if] the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations." *Id.*

Although Plaintiff's opportunities for communication are limited, Plaintiff is not barred from all communication, such as speaking to a counselor and members of the staff. Additionally, Plaintiff offers no evidence indicating that his access to telephone or ordinary visitation is below the level of access necessary to maintain his mental health. Defendants are entitled to judgment as a matter of law on this claim. *See Spain*, 600 F.3d at 200. *Cf. Toussaint*, 801 F.2d at 1113 (citing cases indicating there is no constitutional right to contact visitation and concluding that the limitations were imposed pursuant to a legitimate penological interest).

**V.     Count III.**

In Count III, Plaintiff asserts that Defendants are retaliating against him for exercising his First Amendment rights and for invoking his Fifth Amendment privilege against self-incrimination by refusing to renounce his gang membership and debrief. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994).

Plaintiff's First Amendment argument fails because he does not identify any "speech" that has prompted the alleged retaliation. He has not established that Defendants' actions were in response to his exercise of a First Amendment right.

The Fifth Amendment privilege against self-incrimination "applies when a defendant is compelled to be a witness against himself in his own criminal prosecution or when he is called on to testify in any type of proceeding to answer questions which might serve to incriminate him in any future prosecution." *United States v. Segal,* 549 F.2d 1293, 1999 (9th Cir. 1977). *See also Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997); *Taylor v. Best*, 746 F.2d 220, 224 (4th Cir. 1984); *Bellum v. Vose*, 848 F. Supp. 1065, 1068 (D. Mass. 1994); *Lippert v. Penfold*, 618

F. Supp. 510, 513 (D. Ind. 1984). Here, Plaintiff has not been compelled to act as a witness against himself. Rather, he has been afforded an opportunity to receive more lenient treatment from prison officials in exchange for information concerning his gang affiliation and gang activity in prison.[3] The Ninth Circuit has held that a prospect of more lenient treatment in exchange for admitting fault and providing information does not violate the privilege against self incrimination. *See United States v. Gonzales*, 897 F.2d 1018, 1020-21 (9th Cir. 1990) (acceptance of responsibility in exchange for sentencing reduction does not violate the Fifth Amendment). Other courts have applied this analysis to prison debriefing procedures, holding that offering a prisoner more lenient treatment in exchange for his renouncing prison gang affiliations and providing information about gang activities does not violate the Fifth Amendment. *See Baptisto v. Ryan*, 2005 WL 2416356 (D. Ariz. Sept. 30, 2005) (discussing authorities); *Galvedon v. Marshall*, 1997 WL 765955 (N.D. Cal. Nov. 12, 1997).[4]

Moreover, to establish a violation of the Fifth Amendment, a plaintiff must show more than a merely trifling or imaginary risk of incrimination. *Marchetti v. United States,* 390 U.S. 39, 53 (1968); *Baptisto*, 2005 WL 2416356 at 7. Plaintiff has provided no evidence that information provided by him in debriefing would be used by Defendants in a subsequent criminal prosecution. Nor does he provide examples where such incrimination has occurred to other inmates. Because Plaintiff has not established a real threat that debriefing would result in self-incrimination, he has failed to establish a Fifth Amendment right not to debrief. *See Griffin v. Gomez*, 1995 WL 396857 (N.D. Cal. June 29, 1995); *Medina v. Gomez,* 1997 WL 488588 at 7 (N.D.Cal. Aug. 14, 1997); *Castrellon v. Gomez*, 1997 WL 361199 (N.D. Cal. June 23, 1997);

---

[3] ADOC Rule 806.06 provides, "[t]he purpose of a debriefing is not to obtain incriminating criminal information or evidence against the member. The primary objective is to learn enough about the member and the STG to: [1] convince the Department that the inmate has dropped out of the STG; [2] provide additional information regarding the STG's structure, activity and membership...; [3] provide sufficient information to determine if the inmate may require protection from other STG members or suspects."

[4] The Ninth Circuit has held in an unpublished opinion that prison debriefing requirements do not violate an inmate's privilege against self-incrimination. *See Castro v. Terhune*, 29 Fed. Appx. 463 (9th Cir. 2001).

-12-

*Garcia v. Gomez,* 1996 WL 390320 (N.D. Cal. July 3, 1996)*; Zarate v. Bunnell,* 1994 WL 374547 (N.D. Cal. June 30, 1994). Defendants are entitled to summary judgment on this claim.

Plaintiff also contends that Defendants are using the conditions of confinement at SMU-II as "excessive force" to compel him to incriminate himself. In addition to the fact that Plaintiff is not being required to incriminate himself, as explained above, Defendants are entitled to summary judgment on this claim because Plaintiff presents no evidence that the purpose of SMU-II conditions is solely to force inmates to debrief or that the conditions are imposed "maliciously and sadistically for the very purpose of causing harm." *See LeMaire*, 12 F.3d at 1452-53; *Madrid v. Gomez*, 889 F. Supp. 1146, 1266 (N.D. Cal. 1995).

**IT IS ORDERED:**

1. Defendants' motion for summary judgment is **denied in part and granted in part**. The motion is **denied** with regard to Plaintiff's exercise claim. The motion is **granted** with respect to Plaintiff's due process claim, Plaintiff's other Eighth Amendment claims, and Plaintiff's retaliation claim.

2. Plaintiff's motion for summary judgment is **denied**.

3. Defendants shall have thirty days from the date that this order to submit a motion for summary judgment with regard to Plaintiff's exercise claim. Plaintiff shall have thirty days from the date the motion to respond, and Defendants shall have fifteen days to reply.

DATED this 31st day of March, 2006.

_____
David G. Campbell
United States District Judge

-13-